## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HIROYUKI NOZAWA, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| CYPRESS SEMICONDUCTOR CORPORATION, W. STEVE ALBRECHT, HASSANE EL-KHOURY, OH CHUL KWON, CATHERINE P. LEGO, CAMILLO MARTINO, JEFFREY J. OWENS, JEANNINE SARGENT, and MICHAEL S. WISHART | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Hiroyuki Nozawa ("Plaintiff") by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Cypress Semiconductor Corporation ("Cypress" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Cypress and the Defendants.

## SUMMARY OF THE ACTION

1.     Plaintiff brings this class action on behalf of the public shareholders of Cypress against the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Infineon Technologies AG ("Infineon" or "Parent") (the "Proposed Transaction").

2.     On June 3, 2019, Cypress entered into an agreement and plan of merger (the "Merger Agreement") with Infineon and IFX Merger Sub, Inc., a wholly owned subsidiary of Parent ("Merger Sub"), pursuant to which, among other things and subject to the conditions set forth therein, Merger Sub will merge with and into the Company (the "Merger"), with the Company continuing as the surviving corporation and a wholly owned subsidiary of Infineon.

3.     Pursuant to the terms of the Agreement, the Company's shareholders will receive $23.85 in cash for each share of Cypress common stock owned.

4.     The consummation of the Proposed Transaction is subject to certain closing conditions, including the approval of the stockholders of Cypress.  The Company has scheduled a special meeting of shareholders to vote on the Proposed Transaction for August 27, 2019 at 10:00 a.m., Pacific Time.

5.     On July 2, 2019, in order to convince Cypress' stockholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

2

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Cypress and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Cypress stockholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.  Additionally, the Company's common stock trades on The Nasdaq Global Select Market (the "NASDAQ"), which is headquartered in this District.

## THE PARTIES

10.     Plaintiff is, and has been at all times relevant hereto, the owner of Cypress common stock.

11.     Defendant Cypress is a Delaware corporation with its principal executive offices located at 198 Champion Court, San Jose, California 95134.  The Company's common stock is traded on the NASDAQ under the symbol "CY."

12.     Defendant W. Steve Albrecht ("Albrecht") is and has been the Chairman of the Company's Board at all times during the relevant time period.

13.     Defendant Hassane El-Khoury ("El-Khoury") is and has been the Company's President and Chief Executive Officer, as well as a director of the Company at all times during the relevant time period.

14.     Defendant Oh Chul Kwon ("Kwon") is and has been a director of the Company at all times during the relevant time period.

15.     Defendant Catherine P. Lego ("Lego") is and has been a director of the Company at all times during the relevant time period.

16.     Defendant Camillo Martino ("Martino") is and has been a director of the Company at all times during the relevant time period.

17.     Defendant Jeffrey J. Owens ("Owens") is and has been a director of the Company at all times during the relevant time period.

18.     Defendant Jeannine Sargent ("Sargent") is and has been a director of the Company at all times during the relevant time period.

19.     Defendant Michael S. Wishart ("Wishart") is and has been a director of the Company at all times during the relevant time period.

20.     Defendants Albrecht, El-Khoury, Kwon, Lego, Martino, Owens, Sargent, and Wishart are collectively referred to herein as the "Individual Defendants."

21.     The Individual Defendants, along with Defendant Cypress, are collectively referred to herein as "Defendants."

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Cypress (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

23.     This action is properly maintainable as a class action for the following reasons:

a.     The Class is so numerous that joinder of all members is impracticable. As of May 30, 2019, there were 365,933,848 shares of Cypress common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b.     Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) of the Exchange Act by misrepresenting or omitting material information concerning the Proposed Transaction in the Proxy Statement; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Proxy Statement as currently composed.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

f.      A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

24.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

25.     Cypress manufactures and sells advanced embedded system solutions for automotive, industrial, consumer and enterprise end markets. The Company's microcontrollers, analog ICs, wireless and USB-based connectivity solutions and reliable, high-performance memories help engineers design differentiated products and help with speed to market. The Company was incorporated in California in December 1982 and reincorporated in Delaware in September 1986.

### The Company Announces the Proposed Transaction

26.     On June 3, 2019, the Company issued a press release announcing the Proposed Transaction, which stated, in pertinent part:

Munich, Germany, and San Jose, California — 3 and 2 June 2019 — Infineon Technologies AG (FSE: IFX / OTCQX: IFNNY) and Cypress Semiconductor

Corporation (NASDAQ: CY) today announced that the companies have signed a definitive agreement under which Infineon will acquire Cypress for US$23.85 per share in cash, corresponding to an enterprise value of €9.0 billion.

Reinhard Ploss, CEO of Infineon, said: "The planned acquisition of Cypress is a landmark step in Infineon's strategic development. We will strengthen and accelerate our profitable growth and put our business on a broader basis. With this transaction, we will be able to offer our customers the most comprehensive portfolio for linking the real with the digital world. This will open up additional growth potential in the automotive, industrial and Internet of Things sectors. This transaction also makes our business model even more resilient. We look forward to welcoming our new colleagues from Cypress to Infineon. Together, we will continue our shared commitments to innovation and focused R&D investments to accelerate technology advancements."

Hassane El-Khoury, President and CEO of Cypress, said: "The Cypress team is excited to join forces with Infineon to capitalize on the multi-billion dollar opportunities from the massive rise in connectivity and computing requirements of the next technology waves. This announcement is not only a testament to the strength of our team in delivering industry-leading solutions worldwide, but also to what can be realized from uniting our two great companies. Jointly, we will enable more secure, seamless connections, and provide more complete hardware and software sets to strengthen our customers' products and technologies in their end markets. In addition, the strong fit of our two companies will bring enhanced opportunities for our customers and employees."

Steve Albrecht, Chairman of the Board of Directors of Cypress, said: "For the past three years, our Cypress 3.0 strategy has delivered tremendous results and restructured the entire organization to focus on markets that matter. After receiving interest from several companies, we entered into a transaction that is a testament to our team's strategy and hard work. For Cypress shareholders, the combination of continued dividends through closing plus the US$23.85 cash price represents significant value creation. This transaction will create product opportunities that are increasingly important in the competitive automotive, industrial, and consumer markets. As Board members, we are grateful for Cypress's outstanding management team, led by Hassane El-Khoury."

**More robust positioning in high-growth markets**

With the addition of Cypress, Infineon will consequently strengthen its focus on structural growth drivers and serve a broader range of applications. This will accelerate the company's path of profitable growth of recent years. Cypress has a differentiated portfolio of microcontrollers as well as software and connectivity components that are highly complementary to Infineon's leading power semiconductors, sensors and security solutions. Combining these technology assets will enable comprehensive advanced solutions for high-growth applications

such as electric drives, battery-powered devices and power supplies. The combination of Infineon's security expertise and Cypress's connectivity know-how will accelerate entry into new IoT applications in the industrial and consumer segments. In automotive semiconductors, the expanded portfolio of microcontrollers and NOR flash memories will offer great potential, especially in light of their growing importance for advanced driver assistance systems and new electronic architectures in vehicles.

With the addition of Cypress's strong R&D and geographical presence in the U.S, Infineon not only strengthens its capabilities for its major customers in North America, but also in other important geographical regions. The company adds to its R&D presence in Silicon Valley and gains presence, as well as market share, in the strategically important Japanese market. At the same time, Infineon aims to achieve significant economies of scale, making Infineon's business model even more resilient. Based on pro forma revenues of €10 billion in FY 2018, the transaction will make Infineon the number eight chip manufacturer in the world. In addition to its already leading position in power semiconductors and security controllers, Infineon will now also become the number one supplier of chips to the automotive market.

**Improved financial strength following full integration**

The acquisition will also improve Infineon's financial strength and Infineon shareholders are expected to benefit from earnings accretion beginning in the first full fiscal year after closing. The capital intensity will decrease, resulting in an increasing free cash flow margin. Infineon has validated sales and cost synergies assumptions as part of due diligence. Expected economies of scale will create cost synergies of €180 million per annum by 2022. The complementary portfolios will enable the offering of further chip solutions with a revenue synergies potential of more than €1.5 billion per annum in the long term.

Upon successful integration, Infineon will adapt its target operating model accordingly. Then, the company targets through-cycle revenue growth of 9+ percent and a segment result margin of 19 percent. The investment-to-sales ratio is targeted to decrease to 13 percent.

**Transaction details**

Under the terms of the agreement, Infineon will offer US$23.85 in cash for all outstanding shares of Cypress. This corresponds to a fully diluted enterprise value for Cypress of €9.0 billion. The offer price represents a 46 percent premium to Cypress's unaffected 30-day volume-weighted average price during the period.

from 15 April to 28 May 2019, the last trading day prior to media reports regarding a potential sale of Cypress.

Cypress will continue its quarterly cash dividend payments until the transaction closes. This includes Cypress's previously announced quarterly cash dividend of US$0.11 per share, payable on July 18, 2019 to holders of record of Cypress's common stock at the close of business on June 27, 2019.

The funding of the acquisition is fully underwritten by a consortium of banks. Infineon is committed to retaining a solid investment grade rating and, consequently, Infineon intends to ultimately finance approximately 30 percent of the total transaction value with equity and the remainder with debt as well as cash on hand. The financial policy to preserve a strategic cash reserve remains in place.

The acquisition is subject to approval by Cypress's shareholders and the relevant regulatory bodies as well as other customary conditions. The closing is expected by the end of calendar year 2019 or early 2020.

Credit Suisse and J.P. Morgan acted as lead financial advisors to Infineon. Bank of America Merrill Lynch also acted as financial advisor. All three banks acted as structuring banks in addition to providing committed financing for the transaction, Bank of America Merrill Lynch in the lead. Kirkland & Ellis LLP and Freshfields Bruckhaus Deringer LLP are acting as legal advisors to Infineon.

Morgan Stanley is acting as exclusive financial advisor to Cypress, and Simpson Thacher & Bartlett LLP is serving as legal counsel.

### **The Proposed Transaction is Unfair to the Company's Shareholders**

27.    The Proposed Transaction, as currently contemplated, is unfair to the Company's shareholders.

28.    When entering into the Merger Agreement, the Company's Board agreed to preclusive deal protection devices that ensure that no competing offers for Cypress will be forthcoming.

29.    Specifically, pursuant to the Merger Agreement, Defendants agreed to: (i) a strict no solicitation provision prohibiting the Company from soliciting alternative proposals and constrains the Company's ability to communicate with potential acquirors who may have submitted unsolicited alternative offers; (ii) a provision that requires the Company to keep Infineon informed of competing proposals and inquiries from potential alternate acquirors; (iii) a

matching rights provisions which allows Infineon the ability to match any superior proposal; and (iv) a provision that requires the Company to pay Infineon a termination fee of $330 million if the Company terminates the Merger Agreement.

30.     These deal protection provisions, particularly when considered collectively, substantially and improperly limited the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives.   Given that the preclusive deal protection provisions in the agreement impede a superior suitor from emerging, it is imperative that the Company's shareholders receive all material information necessary for them to make an informed decision as to whether to vote their units in favor of the Proposed Transaction.

### FALSE AND MISLEADING STATEMENTS
### AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

31.     On July 2, 2019, the Company filed the Proxy Statement with the SEC.   The Proxy Statement recommends that the Company's stockholders vote in favor of the Proposed Transaction.

32.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding the Cypress Financial Projections

33.     The Proxy Statement contains the financial projections of Cypress' management concerning the Proposed Transaction, but fails to provide material information concerning such.

34.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

35.     In order to make the Cypress Projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

36.     With respect to the Cypress Projections, at the very least, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including (i) gross profit; (ii) operating income; (iii) net income; (iv) diluted EPS; (v) gross margin; (vi) unlevered free cash flow; and (vii) Adjusted EBITDA.

37.     Failure to provide complete and full disclosure of the line item projections for the metrics used to calculate the above-mentioned non-GAAP metrics leave Cypress shareholders without the necessary, material information to reach a fully-informed decision concerning the

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

Company, fairness of the Merger Consideration, and whether to vote in favor of the Proposed Transaction.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Morgan Stanley's Opinion**

38.    The Proxy Statement contains the financial analyses and opinion of Morgan Stanley & Co. LLC ("Morgan Stanley") concerning the Proposed Transaction, but fails to provide material information concerning such.

39.    With respect to Morgan Stanley's *Public Trading Comparables Analysis*, the Proxy Statement fails to disclose the number of outstanding shares of the Company's common stock on a fully diluted basis.

40.    With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose (i) line items used in calculation of unlevered free cash flow; (ii) the terminal values selected in connection with the analysis; (iii) the inputs and assumptions underlying the discount rate of 9.4% to 11.1%; (iv) the inputs and assumptions underlying the perpetual growth rates of 2% to 3%; and (v) the number of outstanding shares of the Company's common stock on a fully diluted basis.

41.    With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose (i) the range of price earnings multiples applied in Morgan Stanley's analysis, as well as the basis for such; and (ii) the inputs and assumptions underlying the selected discount rate of 11.1%.

42.    With respect to Morgan Stanley's *Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples for each of the transactions; (ii) the premiums paid in each of the selected transactions.

43.     With respect to Morgan Stanley's *Equity Research Analysts' Future Price Targets* analysis, the Proxy Statement fails to disclose the price targets for the Company's common stock and the sources by which those targets were obtained.

44.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

45.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transaction.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Potential Conflicts of Interest of Morgan Stanley

46.     The Proxy Statement does not disclose material information concerning potential conflicts of interest facing Morgan Stanley.

47.     First, the Proxy Statement notes that "[i]n addition, Morgan Stanley or an affiliate thereof acts as administrative agent with respect to credit facilities of Cypress," but fails to disclose the amount of money that Morgan Stanley has or will receive in connection therewith.

48.     Next, the Proxy Statement notes that "[i]n the two years prior to the date of Morgan Stanley's opinion, Morgan Stanley and its affiliates have provided financial advisory and financing services for Cypress and have received approximately $3 million in fees in

connection with these services." However, the Proxy Statement fails to disclose the nature of such past services provided to the Company.

49.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transaction.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

52.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

53.     The Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

54.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

55.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

56.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

57.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a registration statement by corporate insiders containing

materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

58.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

59.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

60.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61.     The Individual Defendants acted as controlling persons of Cypress within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cypress, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially

incomplete and misleading.

62.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

63.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

64.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

65.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

66.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably

harmed.

67.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.     Directing the Individual Defendants to disseminate an Amendment to its Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 23, 2019                                Respectfully submitted,


                                                    By: */s/ Joshua M. Lifshitz*
                                                    Joshua M. Lifshitz
                                                    Email: jml@jlclasslaw.com

**LIFSHITZ & MILLER LLP**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

I, HIROYUKI NOZAWA, hereby certify that:

1.  Plaintiff has reviewed the complaint and authorized the commencement of a lead plaintiff motion and/or filing of a complaint on plaintiff's behalf.

2.  I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in CY securities that are the subject of this litigation during the Class Period are attached hereto as Exhibit A.

5.  I have not served as or sought to serve as a representative party on behalf of a Class under this title during the last three years.

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Executed on 07/03/2019

Signature

**Exhibit A**

My transactions in Cypress Semiconductor Corporation (CY) securities that are the subject of this litigation during the class period set forth in the complaint are as follows ("P" indicates a purchase, "S" indicates a sale):

| Security | Date | Sale | Purchase | Number of Shares | Price per Share |
|---|---|---|---|---|---|
| CY | 06/30/2016 | | P | 70 | $10.03 |